CHARLES E. LAWTON, Plaintiff and Appellant, v. VICENTE RODRÍGUEZ-RIVERA, Defendant and Appellee.

No. 4213.   Argued April 26, 1927.—Decided April 23, 1928.

F. Soto Gras for the appellant.   Henry G. Molina for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

In 1924 Charles E. Lawton brought an injunction proceeding against Vicente Rodríguez, praying that the latter be restrained from continuing the construction of a certain house begun on lot No. 4 of Carrion's Court in Santurce in violation of the conditions imposed at the time of making the original sales of all of the lots of Carrion's Court.

The defendant answered. The case was tried and the court finally rendered judgment which was entered on February 4, 1925, sustaining the complaint and ordering the clerk to issue—

"a writ of injunction ordering the defendant, personally or by others in his name, to abstain from continuing the construction already begun . . . . . and ordering at the same time the destruction of any part of the house already built or which may be built at the time of issuance of the writ, imposing the costs on the defendant."

An appeal was taken and the judgment was affirmed in all of its parts by this Supreme Court on May 21, 1926.

Under these conditions, on January 30, 1927, plaintiff Lawton presented to the district court a motion for a rule directed to Rafael Carrión ordering him to show cause why he should not be punished for contempt, and for a mandatory injunction in execution of the judgment entered on February 4, 1925, and affirmed on May 21, 1926.

The facts on which the motion is based, in addition to those already stated, are the following: That, as alleged in the complaint, Rafael Carrión was the author of the plan of improvement of Carrion's Court and imposed on lot No. 4 the restrictive condition which gave rise to the suit, inserted in the original sale by Carrión to G. H. Joy and recorded in the Registry of Property; that Carrión not only knew of the sale made by Joy to defendant Rodríguez, but took part directly in it in order to induce Rodríguez to buy, expressing the opinion that the restrictive clause would not be binding on him; that even when the suit was brought against Rodríguez, Carrión took a direct part in it through his own attorneys, to whom he paid their fees, and was present at the trial as well as at the hearing on the appeal as if he were the real party interested; that subsequent to the judgment and its affirmance Carrión purchased the lot from Rodríguez with perfect knowledge of the judgment; that after the lot was purchased Carrión began to do the work preparatory for building, Henry G. Molina, his counsel, communicating that

fact to Lawton's attorney, F. Soto Gras, who answered objecting that anything be done contrary to the judgment and writing later a letter objecting to the construction in Lawton's name and invoking the judgment; that for some time Carrión abstained and later hurriedly proceeded to construct the foundation and walls of the house, and that he has the intention to finish it.

The court issued the rule to show cause as moved for and Carrión answered as follows: That the court had no jurisdiction to punish him for contempt or to issue any writ of injunction; that without waiving the former defense, the motion was insufficient because it was not verified; that he was really the author of the plan of improvement, in which from the beginning plaintiff Lawton intervened, and that it was by virtue of his intervention that he was able to raise sufficient funds to acquire the property and carry out his plan; that before drawing the plans Lawton selected a lot for himself for a lower price than that fixed for the remaining lots; that he admits that he took part in the sale by Joy to Rodríguez, but denies that he induced the purchaser to buy, his intervention being limited, when called by Joy at the time of the execution of the deed, to expressing his opinion that the vendee had the right to build on the lot, inasmuch as it had a frontage of 20 meters, which was one of the conditions established by him for the sale of lots in the plan of improvement; that he did not take a direct part in defending the case, or in employing attorneys, and was not really the interested party; that on February 9, 1925, at the instance of defendant Rodríguez he agreed to give him $3,300 for the lot and pay the expenses of the suit and in fact paid the said sum to Rodríguez on or about the 9th day of February, 1925, also agreeing with Rodríguez that if the judgment should be reversed, Rodríguez could reacquire the lot for the same $3,300, plus whatever amount he might have paid as expenses of the suit; that he did not pay anything to the attorneys for the defendant until some time later and the deed of sale

from Rodríguez to him was not executed until October 30, 1926; that he attended the trial as a mere spectator and when he made certain remarks to the attorneys for the defendant regarding the falsity of Lawton's testimony, they answered that that false testimony was of no importance because he was not the defendant, but only a third person, and they did not wish to enter into those questions of fact; that he submitted all of these facts and the record of the case to attorney H. G. Molina, who, after a careful examination, told him that the judgment was not *res judicata* and that he could begin to build on the lot, taking care to build at the greatest possible distance from Lawton's lot so that Lawton might not exercise "whatever right he might have to bring the suit again against the respondent," and that he should wait until the return of Lawton, who was away, to begin the construction; that Lawton and his wife returned on October 25, 1926, and on the following second of November he began the construction of the house; that as he was not notified of any judicial proceedings or complaint, he, through his attorney, Molina, addressed attorney Soto Gras in order to inform him what he was doing, so that Lawton might take action if he deemed it wise to do so; that Soto Gras answered by letter protesting in an ambiguous manner against the continuation of the work; that he answered in November, 1926, explaining what his projects were, stating the opinion of his counsel and concluding as follows:

"In view of said opinion and of the circumstances mentioned, I have proceeded to build in the form indicated, without having the least intention or desire of disobeying any order of the courts. As I believe that reason and equity are in my favor, I shall continue the erection of the house until the courts order me to stop."

That said letter was not answered until December 18, 1926, when it was done in the following manner:

"Referring to your favor of November 15, 1926, in answer to my letter of the same month and year, I must advise you that it

38

may perhaps be considered by Mr. Lawton, to whom you should write expressing the contents of your letter.

"On my part I can do nothing and I insist that your building on the lot after the final injunction was granted is a violation of the order of the court, and that this matter has been finally determined, the judgment rendered by the court in this regard being *res judicata.*"

That on November 30, 1926, he stopped the construction, due not to the letter from Soto Gras, but to certain negotiations which required changes in the plans, but as said negotiations failed, on November 13, 1926, he resumed the construction of the house which reached to the beginning of the second floor when the order of the court was received, the money spent amounting to $4,050; that the acts performed are not contrary to the judgment of the court and do not constitute contempt.

The respondent further alleged:

"11.—That according to what he has been informed and in conformity with his own opinion, the judgment of the Supreme Court in the instant case affirming the judgment of this court was rendered as a consequence of the hypothesis regarding the facts, appearing on page 445 of the opinion of that court (Volume 35 P. R. R.), as follows:

"'The preliminary acts of Rafael Carrión y Pachéco in grouping the properties recorded in the registry under an independent number and in making a general plan of the land showing its division into lots with their respective areas and numbered from 1 to 12 fronting on a street opened through the property leaving six lots on each side with a pillar at each entrance to the street bearing the name "Carrion's Court," are an evident and clear demonstration of a general plan of improvement for the exclusive and private use of future purchasers.'

"That conclusion regarding the facts is due to the testimony of plaintiff Lawton before this court, his testimony being false, because, as above stated, the lot of plaintiff Lawton had been selected by him and its purchase agreed on with this respondent before the plan of improvement was drawn and the only thing that was agreed between the respondent and plaintiff Lawton, as well as with all other purchasers of lots in Carrion's Court, was that no house should be

built on a lot having a frontage of less than 20 meters. And it was precisely for this reason that this respondent agreed to appear in the deed executed by Joy in favor of Rodríguez Rivera, this respondent having not the least interest in said sale, no remuneration having been received or offered to this respondent for his intervention in said deed.

"12.—That on the date on which said deed between Joy and Rodríguez Rivera was executed the respondent was not, nor has he been up to the present, owner of even a single square meter of Carrion's Court (except the lot in controversy acquired as a consequence of this suit) and the only intervention the respondent has had in this matter has been in making appear the condition above mentioned regarding a minimum measure of 20 meters per lot for each building.

"13.—That of the 12 lots that originally appeared on the plan four having a frontage of more than 20 meters were modified and divided into 6 lots with a frontage of 20 meters each and that on 3 of said lots houses had been built prior to the date on which the sale by Joy to Rodríguez Rivera was made, no protest having been made by plaintiff Lawton or by any other owners or residents of Carrion's Court, plaintiff Lawton having personal knowledge of all these facts, and as a consequence thereof this respondent could not imagine that the said Lawton would raise, with regard to the lot in question, the averments appearing in the original complaint of this action. That one of said houses appears in the photograph marked letter 'D' (which is attached to this answer and made a part thereof) and said house is directly in front of the house of the plaintiff and was located there on the date, and prior thereto, on which Joy made the sale to Rodríguez Rivera, on a lot, as already stated, with a frontage of only 20 meters which had been segregated from a larger lot appearing in the original plan.

"That between the northern facade of the plaintiff's house and the southern facade of the house which is being constructed by the respondent, which has given rise to this proceeding for contempt, there is an approximate distance of 20 meters. That the house which is being constructed by the respondent is to be used as a private residence and meets all the requirements established for the construction of other houses in Carrion's Court and far from the plaintiff being prejudiced by the construction of this house, the value of his own house is benefited, inasmuch as the said house, with its gardens and other appurtenances, as projected and as they

will be constructed by the respondent, will embellish that vicinity and will be more desirable than a lot without any house.

"That even though the plaintiff Lawton might suffer some prejudice as a consequence of the construction carried out by the respondent (which possibility we cannot see) the prejudice which the respondent would suffer by stopping the work already begun are by far greater than those which might be occasioned to the plaintiff, and therefore this court, as a court of equity, should not grant the writ of injunction prayed for."

The case was tried, both parties introduced evidence and finally on February 1, 1927, the court overruled Lawton's motion. It seems well to quote the following from the opinion of the lower court:

"The principal question in this case, as the court understands it, is the following:

"Whether the judgment rendered by this district court on January 30, 1925, and affirmed by the Supreme Court of Porto Rico on May 21, 1926, reaches and is binding on respondent Rafael Carrión Pacheco, who was not a party to said suit for Injunction, No. 3033.

"The dispositive part of that judgment reads as follows:

"'And considering the pleadings, the evidence, the argument and for the reasons stated in the opinion which will be added to the record, the court renders judgment sustaining the complaint and consequently orders the Clerk to issue a writ of injunction directed to the defendant, commanding that he personally or through others in his name abstain from continuing the construction begun on lot No. 4, described in the complaint and ordering him at the same time to destroy whatever part of it that has been already built or which may be under construction on the date of the writ, with the costs against the defendant.'

"As may be seen, the writ of injunction issued according to the final judgment is addressed to the defendant (and to no one else) and it orders that the defendant personally or through others in his name abstain from continuing the construction of the house begun on lot No. 4, described in the complaint, etc.

"In several of the cases cited by the plaintiff in support of his contentions the judgment of injunction was rendered *against the defendant and all other persons whomsoever*, but in the present case the injunction was rendered only against defendant Vicente Rodrí-

guez Rivera, prohibiting *him personally or through others in his name to build on lot No. 4.*

"Neither the motion nor the evidence shows that respondent Rafael Carrión Pacheco is constructing on lot No. 4 *in the name of Vicente Rodríguez Rivera,* the defendant in the original action in which the injunction was granted.

"Facts and circumstances have been proved in this case which have morally convinced the Court that respondent Rafael Carrión Pacheco has taken a very active part, though indirectly, in the suit for injunction in which the judgment affirmed by the Supreme Court of Porto Rico was rendered.

"If this court were convinced that it could overlook the due process of law with regard to respondent Rafael Carrión Pacheco, it would without any hesitancy enter an order against him in conformity with the motion filed by Charles E. Lawton; but the court cannot lose sight of the fact that Rafael Carrión Pacheco is not legally reached by the effects of the judgment in the suit for injunction rendered January 30, 1925, and affirmed by the Supreme Court of Porto Rico on May 21, 1926."

Lawton appealed to this court and the parties have argued both orally and in writing the questions involved. Their decision depends, in our judgment, on the answer given to the following question: Does the effect of the judgment rendered against Rodríguez reach Carrión?

We know the facts. It is unnecessary to refer to the evidence. In his answer Carrión admits that he purchased the lot from Rodríguez on February 9, 1925, or only five days after the judgment against Rodríguez was entered, although the sale was not evidenced by a public deed until October 30, 1926.

This being so, when the appeal to this Supreme Court from the judgment of the lower court was taken, or at least while the said appeal was being perfected and was pending, the real owner of the lot, that is the party really interested, was not Rodríguez, but Carrión.

In the suit for injunction it was definitely held that the defendant could not build the house which he intended to erect and that is *res judicata* for Carrión also, who knew all

of the facts of the case and who substituted Rodríguez in all of his rights while the appeal was still pending. If Carrión had not remained silent after the purchase of February 9, 1925, and had communicated that fact to the court, he could have appeared legally as the party defendant.

His failure to proceed in that manner can not favor him.

Section 59 of the Law of Evidence provides that the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding.

When Carrión purchased from Rodríguez the suit was still pending in accordance with section 348 of the Code of Civil Procedure, which provides that "an action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." See the case of *Ex Parte Axtmayer*, 19 P.R.R. 378. Thus Carrión acquired the property subject to the result of the suit.

It is true that the injunction operates over the person, but in the present case the question involved and decided was whether or not the owner of the property in question could ignore in the use thereof certain restrictions imposed in selling it and recorded in the registry of property, and not whether defendant Rodríguez for any personal reason could not carry out the construction. Carrión became the owner at the time and in the manner stated and he was reached by the judgment, and as regards him it may be sustained that certain personal circumstances concur which make even more necessary the applicability of the rule, for he was not a mere successor in title, but the original owner, the author of the plan of improvement, the original vendor who imposed the restriction which was interpreted and the scope of which was fixed in the suit, and who, moreover, intervened in the second sale in the manner that we also know and who followed closely all the steps of the suit.

The foregoing is the general impression which we have formed of the case after careful study. However, it seems just to discuss the defenses of the appellee to see whether they destroy or modify that general impression.

In the first defense it is sustained that the remedy which the appellant might have would be an original suit for injunction, but not the summary proceeding instituted, and in the second that that is so because the judgment rendered against Rodríguez "is not *res judicata* against the respondent because the defenses or questions which he could or might wish to 1aise were not the object of the former suit and the respondent was not a party to that suit and had no legal interest (although he did have a moral interest) in that controversy."

In his brief the appellee indicates that the second defense involves the first.

The original proceeding followed by Lawton against Rodríguez was that of injunction. What is the effect of a judgment rendered in a suit of that nature?

Summarizing the jurisprudence on this question Corpus Juris says:

"Rules applicable generally to construction of decrees in equity apply in the case of final decrees awarding or refusing relief by injunction. Also the general principles applicable in respect of the conclusiveness of judgments and decrees generally apply in the case of final decrees awarding or refusing injunctions. A decree for a perpetual injunction operates as a final adjudication which stays the acts threatened." 32 C. J. 387.

This being established and entering into the general field of jurisprudence regarding the effects of a judgment, we find the following in Black on Judgments:

"It is well settled that a judgment is conclusive, not only upon those who were actual parties to the litigation, but also upon all persons who are in privity with them. This is not only a doctrine of our own law but also a principle of general jurisprudence, as appears from the rule of the Roman law that 'the plea of res judicata is available against him who has succeeded to the rights of ownership of the person who suffered the judgment.' It is therefore im-

portant to ascertain what constitutes privity within the meaning of the decisions on this subject. Now privity is defined to be a 'mutual or successive relationship to the same rights of property.' And the common law writers classify privies as privies in law, in blood, or in estate, sometimes adding, as a fourth class, privies in representation. But for the purposes of a discussion of the doctrine of res judicata, this classification is of no practical importance. For we have to do only with privies in estate. And if a person is bound by a judgment, as a privy to one of the parties, it is because he has succeeded to some right, title or interest of that party in the subject matter of the litigation, and not because there is privity of blood, law, or representation between them, although privity of the latter sort may also exist. And in order to create this relationship, two requisites must exist. In the first place, the person who is to be thus connected with the judgment must be one who claims an interest in the subject affected through or under one of the parties. . . . . . In the second place privies, in such sense that they are bound by the judgment, are those who acquired an interest in the subject matter after the rendition of the judgment; if their title or interest attached before that fact, they are not bound unless made parties." 2 Black on Judgments, page 830 *et seq.*

Omitting for the present a consideration of whether or not Carrión was a party really interested in the suit between Lawton and Rodríguez, it can not be denied that he was Rodríguez's successor in interest and acquired the lot in question after the judgment was rendered prohibiting Rodríguez from building in violation of the clauses contained in his title. There was, therefore, between Rodríguez and Carrión the privity which the jurisprudence requires in order that the judgment rendered against the first may be obligatory upon the second. And so it can be sustained that Carrión purchased not only subject to the conditions stipulated, but also after said conditions had been interpreted by the judgment rendered in the suit for injunction.

But it is alleged that if this be so an injustice would be committed by preventing Carrión from adducing certain defenses which Carrión had and which Rodríguez did not raise.

Appealing again to Black on Judgments, we find the following:

"After these preliminary observations we are prepared to state categorically the two main rules which govern the subject of estoppel by judgment, as the same may be deduced from the general result of all the authorities. The first of these chief rules is as follows: A point which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, cannot ·be again drawn in question in any future action between the same parties or their privies, whether the causes of action in the two suits be identical or different. As stated by the Supreme Court of the United States: 'The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery cannot be disputed in a subsequent suit between the same parties or their privies; and, even, if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.' The second of the main rules on the subject may be thus stated: A judgment rendered by a court of competent jurisdiction, on the merits, is a bar to any future suit, between the same parties or their privies, upon the same cause of action, so long as it remains unreversed. Or, as otherwise phrased: 'The doctrine of res judicata is plain and intelligible, and amounts simply to this, that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterward be litigated by new proceedings either before the same or any other tribunal.'" 2 Black on Judgments, Second Edition, page 784 et seq.

We think that the language of the Supreme Court of the United States cited by the commentator could not be plainer. The whole question was involved in the suit between Lawton and Rodríguez. All the defenses could and should have been pleaded. Carrión was not bound to purchase from Rodríguez. If he bought, he did so subject to the judgment rendered. And if there is any case in which a future purchaser was from the beginning aware of everything and had

the opportunity to intervene, if it is true that he really did not intervene, this is the case.

But there is more. We have said that Carrión purchased, although after the judgment of the district court was rendered, before the judgment of the appellate court affirming that of the lower court, which purchase, as shown by the motion of Lawton which has given rise to these proceedings, was not known by Lawton until after the judgment on appeal had been rendered, when it was reduced to a public deed. And this being so, the following doctrine seems to be applicable:

"It is a general rule that a purchaser of property (except negotiable paper before maturity), who buys pending a litigation concerning it, comes into privity with his vendor, so as to be bound by the judgment in that suit the same as if made a party of record. 'We apprehend it is well settled that he who purchases property pending a suit in which the title to it is involved, takes it subject to the judgment or decree that may be passed in such suit against the person from whom he purchases. . . . . .' " 2 Black on Judgments, page 833.

Section 348 of our Code of Civil Procedure is equivalent to section 1049 of the Code of California, and the Supreme Court of that Státe in the case of *Cook* v. *Ceas*, 143 Cal. 221, said:

"Section 1049 of the Code of Civil Procedure does not purport to prescribe a rule of evidence, but merely to determine the condition of an action after judgment has been rendered, and, inferentially, the effect of the judgment;"

If that is so and if considering the case from any aspect the judgment rendered against Rodríguez was entirely obligatory upon Carrión and if Carrión stepped into the shoes of Rodríguez, it is a logical consequence that the procedure to be followed against Carrión in imputing to him a violation of the judgment is the same that should have been followed against Rodríguez if he had committed the same violation. It is our impression that the appellee would not

question that a violation of the judgment by Rodríguez could have been investigated within the same injunction proceeding, without the necessity of beginning a different suit.

There are many decisions of this Supreme Court regarding *res judicata*. It seems convenient to quote the following from the case of *Catholic Church* v. *Municipality of Bayamón*, 27 P.R.R. 789:

"This question of the *res judicata* has been carefully considered by this court and decided in many instances. In *González* v. *Méndez et al.*, 15 P. R. R. 682, the following rule was established and is applicable to this case:

" 'Where the annulment of a conveyance of the property of her minor daughter is sought by a mother by reason of the fact that she was without judicial authorization to make the conveyance, and in another action the annulment thereof is sought on the ground that the mother did not have the *patria potestas* of her daughter, the object of both actions being to recover an inheritance and annul a deed of conveyance, there exists an identity of actions which goes to constitute *res judicata*.

" 'The identity of actions necessary to the existence of *res judicata* is present, although the grounds or reasons for the annulment of the conveyance alleged in such actions are different, when the object of such actions is the same. (Judgment of the Supreme Court of Spain, March 14, 1898.)'

"In this case there are no new facts which have arisen since the first judgment was rendered. From the outset the plaintiff was in a position to base its action on the exact theory of the second complaint. It had the opportunity which is allowed to all citizens. It had its 'day in court.' If by mistaking its remedy rather than by a failure of justice it has lost a right, the fault is its own. A repetition of actions can not be permitted in such circumstances. Speaking for the court, Mr. Justice Figueras said in the case above cited:

" 'This can not be admitted because a stable and serious state of right could never be established because the party obtaining a final judgment in his favor would find himself involved in litigation as often as different reasons could be found by a fertile imagination, although known when the first action was brought.'

"See also the decisions of this court in the following cases: *Quintero* v. *Morales*, 25 P. R. R. 109; *Vega et al.* v. *Rodríguez et*

48

*al.,* 21 P. R. R. 318; *Hernández* v. *Arán et al.,* 20 P. R. R. 50; *Orama et al.* v. *Oyanguren,* 19 P. R. R. 788; *Ninlliat* v. *Suriñach et al.,* 18 P. R. R. 193; *Calaf et al.* v. *Calaf,* 17 P. R. R. 185, and that of the Supreme Court of the United States in *Calaf y Fugurul* v. *Calaf y Rivera,* 232 U. S. 371, 374.''

And also the syllabus of the case of *Ninlliat* v. *Suriñach et al.,* 27 P.R.R. 69:

''Where some controlling fact or question material to the determination of both actions has been determined in a former suit and the same fact or question is again at issue between the same parties, its adjudication in the first, if properly presented, will be conclusive of the same question in the latter suit, without regard to whether the cause of action is the same or not, or whether the second suit involves the same or a different subject matter, or whether or not it is in the same form of proceeding.''

In the third and fourth defenses it is alleged that Lawton had no right to the injunction because he remained silent from November of 1926 to January 22, 1927, and allowed the construction carried on by Carrión to progress considerably, and because Lawton induced Carrión to express his opinion to Rodríguez, by having allowed other lots to be divided into portions with a frontage of 20 meters each.

It will suffice to say that from the pleadings and from the evidence it appears that Lawton was not negligent, and that the acts attributed to him in the manner indicated were clearly involved and might have been interpreted and decided in the suit between Lawton and Rodríguez.

The fifth and sixth defenses read as follows:

''*Fifth: The restriction has lost its value.* 'If, by the change in the surrounding circumstances, this covenant has ceased to be of any substantial value to the plaintiff, she would not be permitted in equity to enforce it simply to annoy and damage other people.' (Brown v. Huber, 28 L. R. A. (N.S.) 705, at page 722.)

''*Sixth: The judgment against Rodríguez is fraudulent.* The judgment against Rodríguez is fraudulent inasmuch as it was based on the false testimony of the plaintiff.''

Great effort is not necessary in order to conclude that if such defenses really concurred in Carrion's favor, he would

have ample field to raise them in a suit brought by him, but in no way can it be admitted that he has the right to vacate a judgment which is obligatory upon him, thus subverting the order required by due administration of justice.

Furthermore, neither the pleading nor the evidence shows such a change of circumstances that might serve as a basis for the application of the doctrine in *Brown* v. *Huber, supra,* nor the existence of fraud on Lawton's part.

Having reached the foregoing conclusions, that is, considering that Carrión consciously and deliberately violated the judgment rendered against his predecessor Rodríguez, which was binding on him, in building as he did on the lot in question, without showing any cause explaining his conduct in a satisfactory manner at the opportunity given him, the order appealed from should be reversed and the case remanded to the district court of its origin which should render judgment against Carrión for contempt and order the issuance of a writ directing Carrión to destroy the building erected on lot No. 4 of Carrion's Court within the reasonable time that the court may fix, with any other proper pronouncement, and adjudge that Carrión pay the costs.

Mr. Justice Texidor took no part in the decision of this case.

ON RECONSIDERATION

Opinion delivered by Mr. Chief Justice Del Toro July 26, 1928.

A motion for reconsideration of the judgment rendered in this case on April 23, 1928, was granted, but limiting the arguments of the parties to the pronouncement relative to the contempt and to whether this court was bound to render the judgment or order which the district court should have rendered, inasmuch as regarding the granting of the injunction the court had no doubt.

It is alleged in the motion and was contended at the hearing that this court has no jurisdiction of a contempt of a

criminal nature in which a judgment of acquittal was rendered; because the judgment appealed from does not appear in the record; because it prevented the respondent from pleading certain defenses which he had, and because this court did not render the judgment which the district court should have rendered.

The question of jurisdiction now raised was not formerly raised by either party. They both submitted the case entirely to the decision of this court. However, as it is a privileged question which may be raised at any time, we should consider it.

After the judgment in the suit brought by Lawton against Rodríguez had been rendered Carrión became the owner of the lot belonging to Rodríguez and performed the acts referred to in violation of the judgment. Lawton then moved the court for a rule commanding Carrión to appear and show cause why he should not be punished for contempt and why a peremptory and mandatory injunction should not issue in execution and performance of the judgment ordering Carrión to destroy immediately the building begun.

The rule was issued. Carrión appeared and pleaded in defense of his rights. Evidence was examined and the district court finally overruled the motion, not because it understood that Carrión was not guilty, but because it believed that the effects of the judgment did not reach him.

An appeal was taken to this court and the case was fully argued orally and in writing.

This Supreme Court, by Mr. Justice Hutchison, in the case of *In Re Montalvo*, 22 P.R.R. 608, held as follows:

"The only question raised is whether the present appeal is to be governed by rules of civil or of criminal procedure and that question hinges of course solely upon the character of the judgment appealed from. The general principles by which we should be guided in this regard have perhaps never been more clearly stated than by Judge Vanfleet in *Hammond Lumber Co.* v. *Sailor's Union of the Pacific*, 167 Fed. 809, and Mr. Justice Lamar in *Gompers* v.

*Buck Stove and Range Co.*, 221 U. S. 418. See also note to *Rothschild & Co.* v. *Steger & Sons Piano Mfg. Co.*, 42 L. R. A. (N. S.) 793, and previous notes therein cited.''

The syllabus of the case is as follows:

''The appellant was adjudged in contempt by the District Court of Aguadilla for failing to comply with the requirements of a writ of injunction issued in a proceeding prosecuted by Joaquín Oronoz Rodón in the said court in which the appellant was defendant. Joaquín Oronoz moved for dismissal of the appeal on the ground that he was not served with notice of the appeal. *Held:* That as the judgment appealed from was plainly punitive in its self-evident character, even assuming that the proceedings culminating therein were of an equitable nature for civil contempt, the appellant was justified in adopting the procedure for criminal appeals, and in serving notice upon the *fiscal* as 'attorney for the adverse party,' instead of upon the plaintiff in the injunction proceedings.''

Although some jurisprudence might be found supporting the jurisdiction of this Supreme Court to decide the question submitted by the parties by virtue of the appeal, considering all of the circumstances we think that any doubt existing should be decided in favor of the person who was acquitted.

The question of punishment for contempt is not really the important one. The principal matter involved is to prevent that the judgment rendered in this suit by the district court on February 4, 1925, and affirmed by this Supreme Court on May 21, 1926, be ignored and that acts be committed with impunity in violation of it.

This being so, the judgment rendered by this court on April 23, 1928, should be modified by striking from it everything with regard to contempt and substituting therefor the following pronouncement: ''As regards the contempt, the court abstains from intervening.'' This, of course, does not mean that the district court may not proceed against Carrión for contempt by virtue of any new situations which may develop in the case.

The part relative to the destruction of the building should stand. The jurisdiction of this court is evident.

The order appealed from signed by the district judge appears in the record. That order is not a judgment which should have been entered in the Register of Judgments of the Court.

The opinion of this court rendered in support of its judgment of April 23 shows that all of the defenses presented by Carrión were considered on their merits, even those believed to be proper for Carrión to raise in a suit brought by him and not in support of his decision to take justice in his own hands.

It is true that section 306 of the Code of Civil Procedure as amended in 1906, Comp. 1911, page 867, imposes upon this court when it reverses a judgment the duty of rendering the judgment that the lower court should have rendered, with the exceptions established, which practice we have followed in all cases in which it has been possible to do so.

Given the nature of this case, we thought that the rule followed was the best. The question of contempt having been eliminated, the provision of the law will be followed and we shall make the order which the district court should have entered, fixing a period of 90 days from the date on which the judgment of this court is received in the district court for the destruction of the house built in violation of the judgment, imposing the costs on Carrión.